IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

RONNIE DAVIS WALLS                                                              PLAINTIFF

VERSUS                                                 CIVIL ACTION NO. 5:06cv188-MTP

CLIFTON KAHO, ET AL.                                           DEFENDANTS

MEMORANDUM OPINION AND ORDER

This matter is before the court on separate motions for summary judgment filed by Defendant Wexford Health Sources, Inc. [159] and Defendants Donna Foster, Dr. Joseph Blackston and Dr. Rochel Walker [163]. Having reviewed the submissions of the parties, the entire record in this case and the applicable law, for the reasons set forth below the court finds that the motions should be granted and that Plaintiff's claims against the moving Defendants should be dismissed with prejudice.[1]

Factual Background

The instant prisoner civil rights lawsuit, filed *pro se* on December 19, 2006, arises out of medical treatment Plaintiff received following a vehicular accident that occurred on October 10, 2005. Plaintiff asserts claims against Donna Foster, Dr. Joseph Blackston, Dr. Rochel Walker and Wexford Health Services, Inc. ("Wexford") relating to the post-accident medical care he received at Central Mississippi Correctional Facility ("CMCF"). Plaintiff's allegations, as clarified and amended by Plaintiff in his sworn testimony at an omnibus hearing held on April

---

[1] The parties having consented to disposition by the Magistrate Judge and the District Judge having entered an Order of Reference [82], the court is authorized to enter final judgment and make dispositive rulings pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 73 and Local Rule 73.1.

1

28, 2008, pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985),[2] are as follows:

Plaintiff alleges that on October 10, 2005, he was being transported from Jefferson-Franklin County Regional Correctional Facility ("JFCRCF"), where he was an inmate, to CMCF for dental treatment when the prison vehicle in which he was traveling collided with the vehicle in front of it.[3] Following the accident, Plaintiff requested medical care because his neck did not "feel right." Later that day, Plaintiff was seen by Dr. Walker at CMCF, who allegedly told Plaintiff that she "didn't see nothing wrong," and that she said she would get him some Ibuprofen later. Plaintiff alleges that after he was seen by Dr. Walker, he was then seen by the dentist as scheduled, had some teeth pulled, was given Ibuprofen and was then taken back to JFCRCF.[4]

Plaintiff was apparently transferred to CMCF at some point following the accident, and was treated by Defendant Foster, a licensed Family Nurse Practitioner,[5] on two occasions. According to Plaintiff, Nurse Foster only prescribed him Ibuprofen and a neck brace, which Plaintiff claims was not enough for his neck problems. Plaintiff then received treatment from Dr. Blackston, whom he claims told him there was nothing wrong with him and advised him to continue taking Ibuprofen.

---

[2] *See Hurns v. Parker*, 1998 WL 870696, at * 1 (5th Cir. Dec. 2, 1998); *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987) (stating that plaintiff's claims and allegations made at *Spears* hearing supersede claims alleged in complaint).

[3] Plaintiff was transferred to CMCF on December 22, 2005, at the request of Dr. Collins at JFCRCF, who told Dr. Blackston that JFCRCF could not handle Plaintiff's medical needs. Plaintiff is currently incarcerated in South Mississippi Correctional Institution in Leakesville, Mississippi.

[4] Plaintiff subsequently received medical treatment on several occasions by Dr. Collins at JFCRCF for neck and back pain. Dr. Collins is not a defendant in this lawsuit and Plaintiff has not made any claims relating to medical care received at JFCRCF.

[5] Plaintiff erroneously refers to Nurse Foster as a doctor throughout his pleadings.

Based on the foregoing, Plaintiff asserts claims against Defendants for denial of adequate medical treatment. Plaintiff also alleges that Wexford, who had contracted with the MDOC to provide health care to state inmates, provided him with inadequate medical care by only giving him a neck brace and generic medications that did not relieve his pain.[6] *See* Amended Cplt. ¶¶ 21-40.

Wexford moved for summary judgment on January 16, 2009. Dr. Walker, Dr. Blackston and Nurse Foster moved for summary judgment on February 27, 2009. Plaintiff has not responded to either motion, despite being ordered by the court to respond.[7]

## Summary Judgment Standard

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is proper "where a party fails to establish the

---

[6] Plaintiff also asserted claims in this lawsuit against Clifton Kaho, Chief Operations Officer at JFCRCF, Melvin Roberts, Transportation Officer at JFCRCF, Samuel Winchester, Warden at JFCRCF, and Jefferson County, Mississippi, the owner of JFCRCF, based on the failure to seatbelt him during the transport. These claims were dismissed with prejudice by Memorandum Opinion and Order [168].

[7] On March 18, 2009, when Plaintiff had failed to respond to either Motion for Summary Judgment, the court entered an Order [165] directing Plaintiff to respond to the motions by March 30, 2009; otherwise, Plaintiff was warned, the motions would be considered and ruled upon without his response. The only response filed by Plaintiff was a "Motion in Response to Summary Judgment Against Plaintiff" [166], in which Plaintiff requested that his claims against Wexford be dismissed without prejudice. Wexford filed a Response [167] opposing Plaintiff's motion and requesting that Plaintiff's claims be dismissed with prejudice instead. In light of the court's disposition of Wexford's Motion for Summary Judgment [159], Plaintiff's motion [166] shall be dismissed as moot.

3

existence of an element essential to his case and on which he bears the burden of proof." *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988). "A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Id.*

This court may grant summary judgment only if, viewing the facts in a light most favorable to the plaintiff, the defendant demonstrates that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If the defendant fails to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. State of Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *Id.* at 712 (quoting *U.S. Steel Corp. v. Darby*, 516 F.2d 961, 963 (5th Cir. 1975)).

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A.*, *Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

Analysis

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. Appx. 963, 964 (5th Cir. Mar. 19, 2004), *cert. denied*, 543 U.S. 864 (2004), (*citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). The Fifth Circuit has noted that deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (*quoting Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). An official acts with deliberate indifference only when he or she knows of and disregards an excessive risk to a prisoner's health or safety. *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (citations omitted).

To successfully make out a showing of deliberate indifference, plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson*, 91 Fed. Appx. at 965 (*quoting Domino*, 239 F.3d at 756). "Unsuccessful medical treatment, ordinary acts of negligence, or medical malpractice do not constitute a cause of action under § 1983." *Id.* (*citing Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999)). The plaintiff is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Additionally, a prisoner's mere "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

Dr. Walker

As noted above, Plaintiff claims that Dr. Walker examined him on the day of the accident but provided no treatment because she determined that there was nothing she could do for him. Plaintiff also claims that Dr. Walker made him wait to see her on several occasions; that she refused to x-ray him; that she only prescribed Ibuprofen or muscle relaxers; and that she never explained the results for the MRI that she ordered.

Plaintiff's un-rebutted medical records (Exh. A to Motion for Summary Judgment) reveal that following the accident, Dr. Walker conducted a physical exam of Plaintiff which showed that he had a full range of motion in his neck, no rigidity and no visible injury. Dr. Walker ordered that Plaintiff be given one 600 mg Ibuprofen while in the clinic and wrote an order for Ibuprofen 400 mg, 1-2 tabs three times per day for 30 days. Following this initial examination, Dr. Walker then saw Plaintiff several more times. On November 28, 2005, Dr. Walker saw Plaintiff for a follow-up appointment and found that Plaintiff had a decreased range of motion in his neck, no edema of extremities and normal reflexes. Dr. Walker ordered analgesic cream and Robaxin, a muscle relaxer. On March 10, 2006, Dr. Walker saw Plaintiff, who was complaining of neck and back pain, and ordered him lay-in meals for one week. On March 16, 2006, Dr. Walker discussed with Plaintiff the results of his cervical, lumbar and thoracic CT-scans and increased his Ibuprofen prescription from 600 mg to 800 mg. On April 25, 2006, in response to Plaintiff's complaints about neck and back pain, Dr. Walker ordered lay-in meals for two weeks. On June 26, 2006, Plaintiff asked Dr. Walker for medication for his pain and Dr. Walker prescribed Ibuprofen and Tylenol, and on July 16, 2006, Dr. Walker ordered Robaxin again for Plaintiff's pain complaints.

Plaintiff's medical records clearly reflect that Plaintiff was treated by Dr. Walker on multiple occasions and rebut Plaintiff's claim that Dr. Walker was deliberately indifferent.[8] *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegation of deliberate indifference.") (*citing Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir. 1993)). Plaintiff's disagreement with Dr. Walker's method of examination, treatment, and/or diagnosis for his ailments simply does not rise to the level of a constitutional violation. *See Norton*, 122 F.3d at 292; *see also McMahon*, 583 F.2d at 174 (holding that prisoners are not entitled to the "best" medical treatment available). Accordingly, Dr. Walker is entitled to summary judgment on Plaintiff's claims.

<u>Nurse Foster</u>

Plaintiff claims that Nurse Foster saw him on two occasions and only gave him Ibuprofen and a neck brace, which he claims were insufficient to help him. Plaintiff's medical records reveal that Nurse Foster examined Plaintiff on December 28, 2005, and prescribed three medications, ordered a c-spine collar for Plaintiff and ordered a c-spine x-ray and thoracic spine x-ray. One month later, on January 27, 2006, Plaintiff told Nurse Foster that his neck pain had not improved. Nurse Foster reviewed the x-rays, which showed no fracture and mild scoliosis, prescribed three medications and made a consultation request for a CT C-spine, thoracic and

---

[8] It is worth noting that Plaintiff was treated by several other medical personnel (not defendants in this action), at JFCRCF, CMCF and SMCI, on numerous occasions, for his alleged neck and back injuries. That treatment has included, *inter alia*, multiple CT-scans, MRI's and x-rays. None of these tests have shown any acute or significant abnormalities; rather, they have shown only minimal or mild degenerative changes.

lumbar spine.

Plaintiff clearly disagrees with Nurse Foster's treatment of his alleged neck injuries. However, as discussed above, such a disagreement this does not rise to the level of a constitutional violation. *See Norton*, 122 F.3d at 292; *McMahon*, 583 F.2d at 174. Plaintiff has failed to establish that Nurse Foster was deliberately indifferent to his serious medical needs and, therefore, she is entitled to summary judgment on his claims.

Dr. Blackston

Plaintiff claims that he saw Dr. Blackston on one occasion, and Dr. Blackston allegedly said there was nothing wrong with him and to continue taking Ibuprofen. However, Plaintiff's medical records show that on December 22, 2005, Dr. Collins at JFCRCF asked Dr. Blackston to transfer Plaintiff to CMCF to better address his medical needs, and Dr. Blackston agreed to do so. Plaintiff was transferred to CMCF that same day. On February 1, 2006, Dr. Blackston received and approved a consultation for a CT scan and on February 7, 2006, an appointment was made for Plaintiff to have a CT scan on March 8, 2006. The third time Dr. Blackston was involved in Plaintiff's medical treatment was when Plaintiff asked for lay-in status and Dr. Blackston granted his request on May 30, 2006.

As with the other Defendants, it is clear from Plaintiff's medical records that he received medical treatment from Dr. Blackson; he simply disagrees with the treatment he received. This does not rise to the level of a constitutional violation and, accordingly, Plaintiff's claims against Dr. Blackston should be dismissed with prejudice.

Wexford

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior*

liability." *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (citations omitted) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability."). "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (*citing Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)); *see also Powell v. Shopco Laurel Co.*, 678 F.2d 504, 505-06 (4th Cir. 1982) (holding that plaintiff could not recover against private state-employed company under Section 1983 based on theory of *respondeat superior*). Thus, to the extent that Plaintiff attempts to place liability on Wexford simply for the acts of the other named Defendants who provided medical treatment to him, such a claim cannot withstand summary judgment.

Further, Plaintiff has failed to demonstrate that Wexford affirmatively participated in any constitutional deprivation or implemented an unconstitutional policy. *See Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). Plaintiff's medical records clearly show that following the accident, Plaintiff received health care from multiple providers, including the other moving Defendants.[9] While Plaintiff may disagree with the medical treatment that was provided, this does not amount to a constitutional violation. *See Norton*, 122 F.3d at 292; *see also McMahon*, 583 F.2d at 174 (holding that prisoners are not entitled to the "best" medical treatment available). Accordingly, Wexford is entitled to judgment as a matter of law on

---

[9] Wexford's contract with the MDOC to provide medical services to inmates was executed on June 9, 2006 and did not go into effect until July 1, 2006. *See* Exh. A to Wexford's Motion for Summary Judgment [160-2]. Thus, any care provided to Plaintiff prior to July 1, 2006 was not provided by Wexford.

Plaintiff's claims for deliberate indifference to his serious medical needs.

In light of the foregoing, the court finds that Defendants' Motions for Summary Judgment should be granted and that Plaintiff's claims against all the moving Defendants should be dismissed with prejudice.

IT IS , THEREFORE, ORDERED AND ADJUDGED that Defendant Wexford Health Sources, Inc.'s Motion for Summary Judgment [159] is granted, Defendants Donna Foster, Dr. Joseph Blackston and Dr. Rochel Walker's Motion for Summary Judgment [163] is granted, and Plaintiff's claims against these Defendants are dismissed with prejudice.

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff's Motion in Response to Summary Judgment Against Plaintiff [166], as well as all other pending motions, be dismissed as moot.

SO ORDERED AND ADJUDGED on this the 9th day of April, 2009.

> s/ Michael T. Parker
> United States Magistrate Judge